*670 OPINION OF THE COURT
John R. LaCava, J.
This is a CPLR article 78 proceeding in which petitioner seeks to annul and vacate respondent New York State Division of Housing and Community Renewal’s (DHCR) determination denying his application to exempt the premises located at 250 Winfred Avenue, Yonkers, New York from the requirements of the Emergency Tenant Protection Act of 1974 (ETPA; McKinney’s Uncons Laws of NY § 8621 et seq. [L 1974, ch 576, §4]). It raises an apparent issue of first impression: whether a municipally mandated and involuntary reduction of the number of dwelling units of a multifamily dwelling to fewer than six qualifies the premises for deregulation where, on the "base date,” the premises contained seven units — three of which were illegal. The court concludes that it does.
Petitioner purchased the premises in 1965. From that time and until early 1989, apparently in violation of its certificate of occupancy, it was operated as a seven-unit rental property with two units each on the first and second floors and three units in the basement, one of which is a furnished room. In 1974 and pursuant to the then recently enacted ETPA, the Yonkers City Counsel declared the existence of a housing emergency and thereby subjected buildings with six or more residential units to rent regulation (see, McKinney’s Uncons Laws of NY § 8625 [a] [4] [a]). Petitioner thereafter registered the premises with the DHCR and operated the premises as a regulated apartment building for approximately 15 years.
Thereafter, the Yonkers Building Department appears to have become aware of the fact that petitioner was operating the premises in violation of its certificate of occupancy. By notice of violation dated December 1,1988 petitioner was cited by the City of Yonkers Building Inspector for "renting [a] 4-family house as [a] 7-family — in violation of Certificate of Occupancy of record” (which omits any mention of the basement apartments). As a result and soon thereafter, the basement tenants were evicted. The premises were reinspected on May 23, 1989. The Building Inspector "found that the violations listed on notice dated December 1, 1988 have been cleared to the satisfaction of the Building Department.”
On January 26, 1990 petitioner filed with the DHCR an "Application * * * to Determine Whether Building/Apartment Is Exempt From the [ETPA] or The Rent Stabilization Law” on the grounds that "the City of Yonkers ordered [him] *671 to remove three of the seven apartments in the building.” He asserted that "[t]he ordered work has been completed, including the removal of all required bathrooms and kitchens.”
In response to the application, in late March and early April 1990 three out of the four remaining tenants submitted comments to the DHCR. No responding tenant could affirmatively state whether or not the kitchen and bathroom fixtures were removed from the previously occupied basement units.
On June 28, 1990 the DHCR sent an examiner to inspect the premises. He observed and reported that there were four apartment doors upstairs and three in the basement, six gas meters and seven mailboxes. He did not gain entry into the basement units.
By order and determination of July 16, 1990 the District Rent Administrator (DRA) found, in part:
"Notices from [t]he City of Yonkers advising the owner of the illegal use of [the house], and an inspection of the property on June 28, 1990 by a DHCR inspector which revealed 7 apartments, 6 gas meters and 7 mailboxes, it is determined that the present owner purchased the property with the understanding that it was being operated as a 7 family multiple dwelling, which the evidence in the record indicates had been the status of the property for sometime.
"Therefore, based upon the Regulations that the removal of an apartment unit/s does not, in and of itself, constitute a basis for removal of a subject property from the Emergency Tenant Protection Act, the owners application for exemption from The Emergency Tenant Protection Act is denied.”
Petitioner filed a timely petition for administrative review (PAR). Therein, among other things, he emphasized that the determination to reduce the number of dwelling units was not his doing but, rather, was by mandate of the City of Yonkers. In response to the tenants’ assertion that there might still be basement apartments, petitioner again noted that the Yonkers Building Inspector had already determined that the violations no longer existed.
In administratively affirming the DRA’s determination and denying the PAR, Deputy Administrator Elliot Sander stated, in pertinent part: "The Commissioner finds that even if the owner has reduced the number of apartments pursuant to the City of Yonkers order as alleged, this would not, in and of itself, exempt the subject building from ETPA regulation. Buildings which contain the requisite number of dwelling *672 units on the ETPA operative day, do not become exempt by reason of a subsequent reduction in the number of units.”
Herein, petitioner argues, inter alla, that the determination is arbitrary, capricious, illegal and void. Further, he asserts that it is conclusory and baseless and that there exists no authority upon which the DHCR could have rendered the determination.
Appealing to the court’s equitable powers, petitioner notes that the building was registered annually with the DHCR and that he had abided by the relevant regulations since the initial registration in 1974. Such regulations include annual rent increase caps. He asserts that the mandated reduction in the amount of units reduces his rent roll by almost 50% without any decrease in expenses and costs.
Respondent contends, inter alla, that the determination is neither arbitrary nor capricious and is in full accord with all applicable rules, regulations and statutes. It further argues that the administrative record, including the findings of the DHCR inspector, provides a rational basis for the determination that the number of units had not been reduced and that, even if it had, such did not constitute a basis for its removal from ETPA regulation.
In rendering its determination herein, the court is cognizant that the "DHCR’s interpretation of the statutes it administers, if not unreasonable or irrational, is entitled to deference” (Matter of Salvati v Eimicke, 72 NY2d 784, 791 [1988]).
In its memorandum of law, respondent takes the position that "[t]he determinative and controlling factor in this matter is the uncontroverted fact that on the 'base date,’ i.e., June 28th, 1974, the [premises did, in fact, contain six or more housing accommodations.” In reaching and defending this position, respondent relies upon the consistent line of administrative and judicial authority holding that where the requisite number of dwelling units exists on the ETPA base date, a subsequent reduction to an amount below that will not take the remaining units out from under stabilization protection (Matter of Shubert v New York State Div. of Hous. & Community Renewal, 162 AD2d 261 [1st Dept 1990]; Orin Mgt. Corp. v New York City Conciliation & Appeals Bd., NYLJ, Mar. 7, 1984, at 6, col 1 [Sup Ct, NY County]; Matter of Frankel [Rent Stabilization Assn.], NYLJ, Apr. 2, 1970, at 2, col 3 [Sup Ct, NY County]). Such cases, however, deal with the "unilateral” reduction of units. The rationale is that a contrary result *673 "would be inconsistent with the purposes underlying the legislation regulating rents for multiple dwellings” (Matter of Shubert v New York State Div. of Hous. & Community Renewal, supra) and would allow landlords to circumvent the law and violate public policy (Matter of Frankel [Rent Stabilization Assn.], NYLJ, Apr. 2, 1970, at 2, col 3 [Sup Ct, NY County], supra; see also, 129 E. 56th St. Corp. v Harrison, 115 Misc 2d 506, 512).
Such rationale does not apply, however, where, as here, the reduction of the number of units to that below six is beyond the power of the property owner, is the result of a lawful order of the governing municipality, and is not done with the intent of rendering the premises exempt from the ETPA. The court finds that the DHCR’s blind application of the "base date” rule to the matter sub judice is irrational and unreasonable. The mandatory and involuntary reduction in the number of apartments to below six removes the building from the regulatory provisions of the DHCR and the ETPA. The DHCR’s finding to the contrary is irrational and will not be upheld under the unique circumstances of this case. Further, whether or not petitioner knew that the basement apartments were not covered by the certificate of occupancy and, as such, were illegal is irrelevant. He duly registered his seven-unit premises and subjected himself to the rigors of rent regulation upon the declaration of a housing emergency in 1974 and the enactment of the ETPA. Now that he has been subjected to and complied with a mandatory reduction of units to below six, deregulation is appropriate.
The legal determination made herein, however, does not necessarily warrant the granting of the ultimate relief requested — deregulation. A careful review of the record reveals that no persuasive factual determination has been made by the DRA or the Deputy Commissioner that petitioner has adequately altered the basement apartments so as to constitute, for DHCR purposes, nonresidential space — storage or otherwise.
The DHCR inspector merely counted gas meters, mailboxes and doors. While this data appears to suggest the existence of six or seven separate units, such a conclusion is not surprising considering the fact that the building had accommodated seven dwelling units for a period of 15 years. The DRA’s recitation in his July 16, 1990 determination that "an inspection * * * by a DHCR inspector * * * revealed 7 apartments” is based on inadequate information, is inaccurate, and is, *674 therefore, erroneous. In addition, the DRA relied upon this inconclusive data as a basis to conclude that petitioner knew the premises was a seven-family dwelling and that such status had existed for "sometime.”
The Building Inspector’s May 24, 1989 letter of compliance is prima facie evidence of the removal of the three illegal residential units from the basement. Considering, however, that it is petitioner who has the burden of establishing exemption from the ETPA, that three current tenants have expressed some doubt as to whether the residential units were removed, and, most significantly, that the DHCR inspector never gained access to the basement area, the court finds it necessary to remand the matter for the limited purpose of allowing a DHCR inspection of the full basement area. Only then can a factual determination be made as to whether appropriate measures were taken to remove the illegal units. Such inspection and determination shall be made within 30 days of petitioner’s service, by certified mail, return receipt requested, of a copy of this decision and order upon respondent.
Upon a finding that the residential units have been adequately removed, the court directs that the DHCR grant the requested exemption and deem the premises exempt from ETPA regulation. If, on the other hand, the DHCR finds to the contrary, petitioner may administratively appeal that determination, if it be so advised.
In reaching its determination, the court did not, as requested, take into account the equitable arguments advanced by petitioner. Equally availing arguments could have been made on behalf of the tenants, most of whom are long-term residents of the premises who have long enjoyed the protection of the ETPA.
Finally, as argued by respondent, since petitioner failed to raise a "substantial rehabilitation” exemption from rent regulation (McKinney’s Uncons Laws of NY § 8625 [a] [5]) before the DHCR, he cannot complain that such was not addressed in the administrative determinations below. Additionally, he cannot raise it for the first time in this proceeding. Accordingly, the court summarily rejects any such arguments.